KONIECZKA v. MT. CLEMENS METAL PRODUCTS CO.

1. Evidence—Bodily Condition Before and After Accident—Lay Witnesses—Observation and Comparison.

Testimony of lay people as to bodily condition of party involved in an accident before and after the event is competent, where their opportunity for observation and to make comparison arose from daily contact before and after the accident.

2. Same—Physicians and Surgeons—Hypothetical Questions.

Motion to strike testimony of several physicians as to response to hypothetical questions relative to plaintiff woman's condition after discharge as cured by 1 doctor 3 months following injuries sustained in automobile accident, wherein she sustained a mild concussion, lacerations to knee, hip, elbow, and arm, and 3 fractured ribs; was subsequently treated for hypertension, hypersclerotic heart disease, and bronchiectasis; and was operated on for lobectomy, *held*, properly denied, where there was testimony to support each of the conditions for which the injured plaintiff and her husband were attempting to recover.

3. Damages—Houskeeping Service—Medical and Hospital Expense.

Verdict of $7,000 to plaintiff husband of woman who was injured in automobile accident *held*, not excessive in view of the testimony as to loss of his wife's services as housekeeper and substantial medical and hospital bills past and future.

---

References for Points in Headnotes

[1] 20 Am Jur, Evidence § 859.
[2] 20 Am Jur, Evidence § 788.
[3] 15 Am Jur, Damages § 206.
[4] 15 Am Jur, Damages § 226.
Excessiveness of damages in action by person injured for personal injuries not resulting in death.   46 ALR 1230; 102 ALR 1125; 16 ALR2d 3.
[5] 3 Am Jur, Appeal and Error § 890.

4. SAME—PAIN AND SUFFERING—CONTINUED NERVOUS STATE—LOBECTOMY.

Psychiatrist's testimony, together with that of lay witnesses, indicating the continuance of an exceedingly nervous state of injured plaintiff woman, pain and suffering involved in automobile accident, resulting lobectomy, and mental pain and suffering *held*, to justify verdict of $8,000.

·5. APPEAL AND ERROR—VERDICT—OVERWHELMING WEIGHT OF EVIDENCE.

The Supreme Court will not disturb a jury verdict unless it is against the overwhelming weight of the evidence.

Appeal from Saginaw; Huff (Eugene Snow), J. Submitted June 10, 1960. (Docket Nos. 19, 20, Calendar Nos. 48,096, 48,097.) Decided July 11, 1960. Rehearing denied September 15, 1960.

Two consolidated cases, by Theodore A. Konieczka and by Antoinette Konieczka against Mt. Clemens Metal Products Co., a Michigan corporation, and Leon Kiel for personal injuries, medical expenses, and loss of services resulting from collision of motor vehicles. Verdicts and judgments for plaintiffs. Defendants appeal. Affirmed.

*John P. Murphy, Jr.,* for plaintiffs.

*Stanton & MacKenzie (H. Monroe Stanton,* of counsel), for defendants.

KAVANAGH, J. Antoinette Konieczka sues for injuries sustained in an automobile accident of admitted responsibility by the defendants. Her husband, Theodore A. Konieczka, sues for hospital and medical expenses and loss of services. The 2 cases were consolidated for trial purposes. The jury returned verdicts of $8,000 for Antoinette Konieczka and $7,000 for her husband. The accident occurred on May 3, 1954. Antoinette was riding as a passenger in an automobile which was involved in an inter-

section accident. She was thrown from the car, landing on the pavement. She was unconscious for about 5 minutes and was lying 6 inches to a foot from the wheel of defendant corporation's truck which had been involved in the accident. She was treated for injuries following the accident, which injuries consisted of a laceration of the right knee, 3 inches in length; lacerations of the right elbow, 1–1/2 inches in length; abrasions of the skin of the right arm and on the right hip; and posterior fractures of the right sixth, seventh and eighth ribs. She was hospitalized for 3 or 4 days; was in bed at home for a week; and was up and around the house following that week. She was discharged as cured by Dr. Brender during August of 1954. About 3 months after the accident the plaintiff wife became highly nervous and, though she had never smoked before, began to smoke heavily. She complained of severe headaches and was treated by several doctors from October 5, 1954. In January, 1957, Dr. Skowronski hospitalized her for treatment of hypertension and hypersclerotic heart disease. In November, 1957, she was hospitalized for the tests to confirm diagnosis of bronchiectasis, and later the same month was re-admitted for an operation for a lobectomy. Plaintiff stopped smoking while in the hospital for the lobectomy operation and continued to refrain from smoking until hospitalized for hysteria in January, 1958.

The sole issue at the trial was the extent of plaintiff's injuries. Defendants admit that plaintiff Antoinette Konieczka suffered 3 broken ribs and various bruises and contusions, but deny that recovery should extend beyond the period of 3 months following the accident. Doctors testified both as to the treatment and possibility of causal connection of the accident to the nervousness and the lobectomy.

At the close of plaintiffs' testimony, a motion was made by defendants to strike the medical testimony.

Defendants claim the medical testimony should be stricken because it amounts to pure speculation and conjecture and, therefore, did not support plaintiffs' cause of action. Defendants rely upon their contention that the doctors did not know whether the lung condition existed at the time of the accident. They further claim that the doctors' testimony only showed the anxiety might have caused the woman to smoke. They further claim the testimony of the doctors indicated the smoking might possibly aggravate a pre-existing lung condition. Defendants contend the best that could be said for the doctors' testimony was that the lung operation might not have been necessary if plaintiff wife had not been a heavy smoker. Defendants also claim the doctors are, therefore, basing a possibility upon a possibility and that as such it is not properly admissible evidence on which a jury should be allowed to speculate and conjecture.

Plaintiffs, in opposition, argue that the testimony of the doctor who had treated plaintiff prior to the accident and all the lay witnesses was to the effect that plaintiff wife was a healthy, normal woman prior to the accident; that the testimony discloses she became extremely nervous following the accident; and that she began smoking heavily and developed the bronchiectasis and related lung condition which necessitated the lobectomy. It is plaintiffs' contention that the accident set in motion the series of events which were the result of the accident.

The motion to strike the testimony of the doctors was denied. The cases were submitted to the jury, with resulting verdicts. Motions for new trials were made and denied.

Defendants appeal alleging 3 questions:

(1) Is the verdict of the jury as to damages arrived at by basing a possibility upon a possibility or an inference upon an inference?

(2) Did the trial court err in failing to grant defendants' motion to strike medical testimony relative to the plaintiff's lung condition?

(3) Are the verdicts in these 2 cases excessive?

An examination of the appendices and transcript discloses there is considerable testimony with reference to the before and after condition of plaintiff Antoinette Konieczka both by lay people and by doctors. Before discussing this testimony, we point out that *Langworthy* v. *Green Township,* 88 Mich 207, established the right of lay people to testify as to a person's ability to do as good a day's work after getting hurt as before. In that case both witnesses had worked with plaintiff before and after the injury. The Court ruled their testimony was competent, saying (p 214):

"These men had had opportunities for observation and to make comparisons. They saw him at work, witnessed his movements, and observed the volume of work done. The question involved no matter exclusively within the domain of medical science. Indeed, the testimony of these men, as to the matters to which it related, was of a higher and better quality than that of a physician."

Several other Michigan cases have held that "before and after" lay testimony is competent evidence. *Elliott* v. *Van Buren,* 33 Mich 49 (20 Am Rep 668); *Kuney* v. *Dutcher,* 56 Mich 308; *Young* v. *Detroit, Grand Haven & M. R. Co.,* 56 Mich 430; *Harris* v. *Detroit City R. Co.,* 76 Mich 227; *Olson* v. *Village of Manistique,* 110 Mich 656; *Matthews* v. *Lamberton,* 198 Mich 746; *La Due* v. *Lebanon Township,* 222 Mich 301; *Gibson* v. *Traver,* 328 Mich 698.

The record discloses Mrs. Konieczka testified she complained of internal pain after she arrived at the hospital; that her chest pain continued from the time of the accident until the time of the operation

on November 20, 1957; that she began to cough short-ly after having visited Dr. Brender; that she was not at all nervous before the accident compared to her nervousness subsequent to it; that she was never afraid prior to the accident, but is now afraid of everything; that she never smoked prior to the acci-dent; that because of her fear she cannot sleep prop-erly; that she does not go shopping; that she does not go to parties or social gatherings because of her fear; that she attempted to stop smoking but was unable to do so except for the period of time from her lung operation until her nervous breakdown in January, 1958.

Mrs. Romaine Szewczyk, a daughter, testified her mother had excellent health before the accident, but had gone downhill rapidly after the accident; that she had become very nervous and had unfounded fears; that she had a good temperament prior to her accident, but is now temperamental and moody and refuses to attend weddings and social gatherings with her husband, and insists upon staying at home; that she "snaps back at all of us" and engages in ar-guments with the members of her family. Mrs. Szewczyk says that she had no knowledge of any lung symptoms of her mother before the accident, and, because of her active life right up to the time of the accident, she believed her to be in good health.

Mrs. Barbara Morrison, another daughter, testi-fied her mother became unstable and nervous and began smoking about 2 or 3 months after the acci-dent. She further testified that her mother never had a cough prior to the accident; that after the ac-cident she was unable to do her work; that she re-fused to attend social gatherings and was moody. She further testified that prior to the accident her mother was a strong woman.

Theodore A. Konieczka testified his wife was in good health prior to the accident but subsequently

developed a cough; became highly nervous; had
pains in her side; that she began smoking about 9
weeks after the accident and continued until the lung
operation; that she was terribly nervous, was unable
to do her housework, refused to attend social gather-
ings, and was so afraid that she put newspapers on
the windows; and that she would spend her time in
the basement for fear of something happening to
her.

Dr. C. A. Skowronski, in answer to a hypothetical
question assuming the facts of the accident and the
subsequent conduct of Mrs. Konieczka, testified as
follows:

"In my opinion her anxiety state was definitely
an aftermath of the accident insofar as I have been
taking care of this family since 1948 and I have never
had any contact with her for any similar ailments."

He further testified that Mrs. Konieczka's smok-
ing certainly aggravated her bronchiectasis and that
smoking would aggravate such a condition more in
one who never previously smoked. He also said
her smoking was compulsive and that in cases such
as Mrs. Konieczka's anxiety state it would be very
difficult to quit, and if she did she might require
another escape valve or have a nervous breakdown.
In answer to a hypothetical question whether Mrs.
Konieczka would have escaped the lung operation
had it not been for the irritation caused by the in-
halation of cigarette smoke, Dr. Skowronski said
Mrs. Konieczka might possibly not have had to have
the operation even though she had bronchiectasis
if it weren't for the cigarette smoking and her anx-
iety state. Answering a hypothetical question under
facts assuming excessive cigarette smoking from
August, 1954, to November, 1957, the doctor stated
it definitely would increase the chances of having
to have the operation and would aggravate her con-

dition.  He also stated the combination of the accident and its subsequent physical results, the anxiety state, and the lung operation would decrease the person's vitality of resistance  to everyday diseases.

Dr. Shek testified it was possible for cigarette smoking to aggravate a bronchiectasis and that it is more likely for bronchiectasis to be aggravated in the case of one who smokes excessively than in the case of a nonsmoker.

Dr. Jaenichen testified that Mrs. Konieczka's complaint to him was of residual pain in the front of her chest and in the right costal-sternal region, that is where the ribs attach to the breastbone, and nervousness.  His diagnosis was that she had residual discomfort in the involved region of her chest, with nervousness.  He also testified the chest pain could have been caused by the accident.

Dr. Gamon testified that Mrs. Konieczka's smoking could be helpful in alleviating the anxiety state and that such habit is not unusual in such situations.  He further testified that excessive inhalation of cigarette smoke could make Mrs. Konieczka's bronchiectasis symptomatic and that if she had not smoked she could have avoided the lung operation.  He further testified the accident probably aggravated the anxiety condition, with resultant smoking to relieve the anxiety condition.

Dr. Goldner testified, in answer to a hypothetical question, that the accident certainly could have been a precipitating factor of Mrs. Konieczka's involuntary depression; that the emotional stress, pain upon gaining consciousness after the accident, mild concussion from the accident, and regaining consciousness very near the truck tire, were precipitating factors.  He further testified that cigarette smoking would have a bad effect on bronchiectasis.

Dr. Brender testified, in answer to a hypothetical question, that, assuming the facts of the accident and

its resultant effects, it is possible an anxiety state could be created.

In the case of *Olson* v. *Village of Manistique,* 110 Mich 656, this Court said (pp 658, 659):

"The plaintiff testified that she was not afflicted with this trouble before her injury by the fall upon the sidewalk. By her testimony, it appears that she was a strong woman, with a family, and keeping 2 boarders, doing all the work for the family. She was corroborated by her husband and others. * * * She was in a position to know whether she was so afflicted before this injury, and the jury had a right to take that testimony into consideration in determining the question whether the trouble from which she was suffering was the result of the injury by the fall, or if it existed before that time. The physician who examined her after the fall was asked if the injury which he found upon such examination could have been caused by a violent fall forward on the sidewalk, and he stated that it could. * * *

"We have already stated what the plaintiff testified to, and what she called other witnesses to show. The answer was supported by that evidence; and we cannot say from this record that the jury had no testimony upon which to base their finding."

From the above statements of the record there was sufficient evidence from which the jury could find the conditions for which the plaintiffs were attempting to recover in this action. The trial court properly denied the motion to strike the testimony and the motion for new trial.

The remaining question is whether or not the verdicts were excessive. The obvious loss sustained by plaintiff husband was more than enough to sustain the jury's verdict of $7,000 awarded him. It included not only the loss of his wife's services as his housekeeper, but substantial medical bills both for the past and future. The psychiatrist's testimony,

as well as the testimony of the lay witnesses, which indicated the exceedingly nervous state plaintiff Antoinette Konieczka experienced since the time of the accident, the pain and suffering involved in the accident, the resulting operation, and the mental pain and suffering, which are apparently continuing even at the present time and could continue for a matter of years, well justified the returning of a verdict of $8,000 on behalf of plaintiff Antoinette Konieczka. This Court will not disturb a jury verdict unless the verdict is against the overwhelming weight of the evidence.   *Griswold* v. *Newhouse,* 353 Mich 485; *Schneider* v. *Pomerville,* 348 Mich 49; *Van Dyke* v. *Rozneck,* 324 Mich 29.

Judgments in favor of the plaintiffs are affirmed. Appellees shall have costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.