William J. MEYERS, Plaintiff,

v.

**WAL-MART STORES, EAST, INC., Defendant.**

**No. CIV. 97-40517.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 21, 1999.

Jeffrey T. Meyers, Linda M. Galante, Detroit, MI, John D. Nickola, Flint, MI, for Plaintiff.

Ronald E. Westen, Lupo & Koczkur, Detroit, MI, Jeffrey S. Sutton, Columbus, OH, for Defendant.

*MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL; GRANTING DEFENDANT'S MOTION FOR REMITTITUR; AND DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW*

GADOLA, District Judge.

A jury trial was conducted in the above-captioned matter, the Honorable Paul V. Gadola, presiding. The trial commenced July 7, 1999, but was subsequently adjourned for a period of nine days due to a death in the family of plaintiff William Meyers. The trial then resumed with the consent of both parties on July 16, July 19, and July 20, 1999. On July 20, 1999, at the conclusion of the four-day trial, the jury returned a verdict in favor of plaintiff.[1]

As discussed more fully below, the jury awarded plaintiff a total of $1,501,400 in economic and non-economic damages. The jury also found plaintiff five percent comparatively negligent, thus reducing the total award to $1,426,330. Judgment was entered in favor of plaintiff on July 29, 1999.

On August 12, 1999, defendant Wal-Mart Stores, East, Inc., (hereinafter "Wal-Mart") timely filed three post-trial motions. The first is a motion for new trial pursuant to Federal Rule of Civil Procedure 59. In the alternative, defendant requests remittitur of the jury award. Finally, defendant renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on the issue of causation regarding plaintiff's allegation of aggravated arthritis. Defendant maintains that there is an absence of evidence showing a causal connection between plaintiff's fall and the alleged "flare-ups" of plaintiff's rheumatoid arthritis. Plaintiff responded to defendant's motions on August 27, 1999. Defendant filed its reply brief on September 21, 1999.

For the reasons set forth hereinbelow, the Court will deny defendant's motion for new trial, grant defendant's motion for remittitur, and deny defendant's renewed motion for judgment as a matter of law.

**I. PROCEDURAL HISTORY**

The instant case arose out of an incident which occurred on January 8, 1997 in a Sam's Club warehouse store, owned by defendant Wal-Mart. Plaintiff William J. Meyers and his wife visited the store located in Southgate, Michigan. Plaintiff and his wife shopped for approximately 45 minutes to one hour. After filling two carts with groceries and other items, they proceeded to the checkout lines. While his wife waited in line, plaintiff went to get a cup of frozen custard. Upon his return, his wife asked plaintiff to go to the box area in order to retrieve a box for their purchases since the store does not provide its customers with bags.

Plaintiff proceeded to the garage area located near the exit doors. The boxes in the back of this area were stacked four or five feet high. The boxes in the front were "scattered all over the place" and were in disarray, according to plaintiff. Just before entering the garage area, plaintiff put his

---

1. During the trial's nine-day continuance, the Court excused two jurors for previously scheduled long-distance prepaid trips. Shortly thereafter, a third juror was excused due to severe illness. At the conclusion of the trial, the jury consisted of four persons. Both parties, after due consideration of the issue, specifically stipulated in writing to a four-person jury pursuant to Federal Rule of Civil Procedure 48. *See* July 20, 1999 stipulation.

custard down. He moved a few boxes with his feet and some with his hands in order to get the box he wanted. Plaintiff then turned around, grabbed his custard in one hand while holding a box in the other hand. At this point, plaintiff began to exit the garage area, whereupon his left foot allegedly tripped on a box and he fell. Plaintiff suffered a fractured hip.

On December 30, 1997, plaintiff filed a complaint against defendant Wal-Mart, alleging that Wal-Mart had maintained the open box bin area of its premises in a negligent fashion with boxes lying upon the floor in a haphazard, disorganized, and dangerous condition. In the complaint, plaintiff alleged the following breaches of defendant's duty of care: (1) failure to maintain the open area in a condition so as to eliminate trip hazards from the area; (2) failure to provide customers with shopping bags so as to avoid the necessity of customers entering the open area where boxes are strewn about; and (3) failure to provide bins and/or other holding devices so that boxes might be safely accessed by customers. *See* Complaint ¶ 12.

On December 11, 1998, this Court issued a memorandum opinion and order denying defendant's motion for summary judgment. *See Meyers v. Wal-Mart Stores, East, Inc.,* 29 F. Supp.2d 780 (E.D. Mich. 1998) (Gadola, J.). In that opinion, after a discussion of the current state of Michigan premises liability law and after reviewing the evidence presented at that point by both parties, this Court held that there was a genuine issue of material fact as to whether an unreasonably dangerous situation existed on defendant's premises. *See id.* at 785-86.

Subsequent to the denial of defendant's motion for summary judgment, both parties expressed a willingness to enter into mediation. Mediation was scheduled with the approval of this Court. *See* January 15, 1999 Order of Reference to Mediation Tribunal Association. On March 2, 1999, the mediator issued a finding of liability on the part of defendant Wal-Mart in the amount of $500,000. Plaintiff accepted that amount as fair compensation. Defendant, however, rejected the mediator's assessment. *See* Mar. 2, 1999 Notification of Acceptance or Rejection of Mediation Evaluation. As a consequence, the case proceeded to trial.

As mentioned previously, trial in the above-entitled matter commenced July 7, 1999, but was subsequently adjourned for a period of nine days due to a death in the family of plaintiff William Meyers. The trial then resumed with the consent of both parties on July 16, July 19, and July 20, 1999. Upon resumption of the trial, the Court had excused two jurors for prepaid prolonged long-distance trips. Shortly thereafter, a third juror was also excused due to severe illness. On July 14, 1999, the parties filed a written stipulation to proceed with five jurors. *See* July 14, 1999 stipulation. On July 20, 1999, the parties filed a stipulation to proceed with four jurors, the number of jurors then remaining. *See* July 20, 1999 stipulation. On July 20, 1999, at the conclusion of the four-day trial, the jury returned a verdict in favor of plaintiff.

The jury awarded plaintiff a total of $1,000,000 in non-economic damages sustained by plaintiff to the present time, $500,000 in non-economic damages reasonably certain to sustain in the future, and $1,400 in economic damages. The jury also found plaintiff 5 per cent comparatively negligent. The Court thus reduced the total award by 5 per cent to $1,426,330. A judgment was entered on July 29, 1999.

## II. LEGAL STANDARDS

Rule 59 of the Federal Rules of Civil Procedure provides, in pertinent part, that

[a] new trial may be granted to all or any of the parties and on all or part of the issues...in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

Fed. R. Civ. Proc. 59(a). The U.S. Court of Appeals for the Sixth Circuit has interpreted Rule 59 as allowing for a new trial "when a jury has reached a 'seriously erro-

neous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)(citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940); *Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir.1989); and *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983)). Whether to grant or deny a motion for new trial is "committed to the sound discretion of the trial court." *Norfin, Inc. v. International Business Machines Corp.*, 81 F.R.D. 614, 616 (D.Colo. 1979).

 Instead of granting a new trial, the court may alternatively grant a remittitur of the amount of damages awarded by the jury. A district court should grant such a motion *only if* "the award clearly exceeds 'the amount which, under the evidence in the case was the maximum that a jury could reasonably find to be compensatory' for the plaintiff's loss." *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 156 (6th Cir. 1996)(citing *In re Lewis*, 845 F.2d 624, 635 (6th Cir.1988) and *Manning v. Altec, Inc.*, 488 F.2d 127, 133 (6th Cir. 1973)). "'Unless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, ... or (3) the result of a mistake, we must let the award stand.'" *Id.* (citing *Leila Hosp. & Health Ctr. v. Xonics Medical Sys.*, 948 F.2d 271, 278 (6th Cir.1991)). The district court's review of a motion for remittitur is reviewed under an abuse of discretion standard. *Id.*

Defendant has also brought a renewed motion for judgment as a matter of law. Pursuant to Federal Rule of Civil Procedure 50,

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter

of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

> Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

\* \* \* \* \* \*

> *If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.* The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment-- and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

> (1) if a verdict was returned:

>> (A) allow the judgment to stand,

>> (B) order a new trial, or

>> (C) direct entry of judgment as a matter of law; or

> (2) if no verdict was returned;

>> (A) order a new trial, or

>> (B) direct entry of judgment as a matter of law.

Fed. R. Civ. Proc. 50(a) & (b) (emphasis added).

 In reviewing a motion for judgment as a matter of law, this Court must consider the evidence in the light most favorable to the nonmovant, giving that party the benefit of all reasonable inferences. *See Tuck v. HCA Health Servs. of Tenn.*, 7 F.3d 465, 469 (6th Cir. 1993). "[W]hen faced with a Rule 50(a) motion, a district court may not weigh the evidence or make credibility determinations, as

these are jury functions." *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir.1999); *see Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990). The Sixth Circuit has further held that "[a] dismissal pursuant to Rule 50(a) is improper where the nonmovant presented sufficient evidence to raise a material issue of fact for the jury." *Id.* (citing *Sawchik v. E.I. DuPont Denemours & Co.*, 783 F.2d 635, 636 (6th Cir.1986)). "In other words, the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate 'whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ.'" *Id.*

## III. ANALYSIS

### A. DEFENDANT'S MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, REMITTITUR

#### (1) A NEW TRIAL IS NOT WARRANTED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59.

█ Defendant has moved for a new trial or, in the alternative, remittitur pursuant to Federal Rule of Civil Procedure 59. Defendant first argues that the jury's award of non-economic damages was out-of-line with awards in other allegedly comparable Michigan cases. *See* defendant's brief, pp. 6-8. As defendant points out, "one factor to be considered in determining whether to set aside an award of damages is whether the award is out of line with awards in similar cases." *Darby v. Ridge*, 827 F.Supp. 1296, 1299 (E.D.Mich. 1993) (Gadola, J.) (citing *Levka v. City of Chicago*, 748 F.2d 421 (7th Cir.1984) and *Wilson v. Beebe*, 743 F.2d 342 (6th Cir. 1984)); *see also Thompson v. National R.R. Passenger Corp.*, 621 F.2d 814, 827 (stating that "[w]hen considering whether an award is excessive, the Court will consider other awards in other cases").

█ Defendant maintains that in contrast to the 1.4 million dollars awarded in the instant action, similar negligence actions in Michigan state courts have generated far lower awards. *See* defendant's brief, p. 6. Defendant contends that Michigan state court juries have customarily awarded damages in the range of $20,000 to slightly more than $200,000, in similar slip and fall cases. *See id.*, p. 7. The following cases are cited by defendant and have been duly reviewed by this Court: *Buben v. Speedway Petroleum Co.*, JVR No. 361297, 1998 WL 1061408 (LRP Jury Nov. 1998) (awarding $20,037 to plaintiff who fractured his hip, requiring total hip replacement, after falling on ice on gas station walkway); *Venter v. Meijer Thrifty Acres*, JVR No. 168321, 1995 WL 797735 (LRP Jury May 1995) (awarding $216,000 to 81-year-old woman who fell on wet area in grocery store, fracturing her hip, which required total hip replacement); *Morris v Bronze Wheel Restaurant*, JVR No. 109254, 1992 WL 519644 (LRP Jury Nov. 1992) (awarding $138,000 to 60-year-old woman who fractured her hip by falling on wet floor of restaurant); *Slawek v. Dayton Hudson*, JVR No. 106577, 1992 WL 505466 (LRP Jury Aug. 1992) (awarding $152,000 to woman who fractured her hip, requiring a replacement, after falling on icy walkway outside Target); *Lange v. Romanowski VFW Post 6896*, JVR No. 65774, 1990 WL 464972 (LRP Jury Aug. 1990) (awarding $190,000 to 78-year-old woman for fractured hip, which required hip replacement surgery, and for loss of consortium to her husband); *Hunter v. Southland Eye Clinic, P.C.*, JVR No. 39013, 1988 WL 368962 (LRP Jury May 1988) (awarding $64,000 to woman who fell on wet floor in clinic, fracturing her hip and requiring hip replacement); *Estate of Torok v. Bormans, Inc.*, JVR No. 38035, 1988 WL 368254 (LRP Jury Apr. 1988) (awarding $144,400 to plaintiff who fell on puddle of water in grocery store, fracturing his hip).

In response, plaintiff argues that defendant ignores the great weight of the evidence presented in the case *sub judice*, and instead provides a litany of allegedly comparable cases in Michigan state courts from 1988 though 1998 involving hip frac-

ture injuries. Plaintiff further maintains that defendant has failed to provide any meaningful review of the evidence or opposing proofs found in the cases cited. *See* plaintiff's brief, p. 2. Plaintiff cites this Court's own decision *Darby v. Ridge,* 827 F. Supp. 1296 (E.D.Mich. 1993), wherein this Court acknowledged

> the Sixth Circuit's admonition to...courts that they "should not attempt to reconcile widely varied past awards for analogous injuries 'which in the abbreviated appellant decisions...seem somewhat similar.'"

*Id.* at 1299 (quoting *Moody v. Pepsi-Cola Metro. Bottling Co., Inc.,* 915 F.2d 201 (6th Cir.1990)). This Court in *Darby* also recognized that

> 'courts are not free to reweigh the evidence and set aside the jury verdicts merely because the jury could have drawn different inferences or conclusion[s] or because judges feel that other results are more reasonable'....Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached.

*Id.* (quoting *Bruner v. Dunaway,* 684 F.2d 422, 425 (6th Cir. 1982)).

Plaintiff specifically addresses the cases cited by defendant. For example, in two of the cases, *Morris* and *Estate of Torok,* there is no indication that hip replacement was necessary. Plaintiff also points out that two of the cases, *Hunter* and *Estate of Torok* are more than eleven years old, making a comparison of dollar amounts "somewhat meaningless." Plaintiff further asserts that he testified during trial that after his hip replacement surgery all pain medication was stopped when his temperature rose to 103 degrees. As a result, he reported experiencing tremendous pain. See Transcript, p. 3-212, attached as Exh. 1 to plaintiff's brief. Plaintiff argues that none of the cases cited by defendant indicates whether any of the plaintiffs sustained the kind of pain experienced by plaintiff Meyers.

Plaintiff has also attached to his brief a list of case summaries, in opposition to defendant's list, showing a range of awards in allegedly similar cases between $2,100,000 and $464,887. *See* Case Summaries attached as Exh. 2 to plaintiff's brief, citing the following cases: *Ruff v. Donut Systems. Inc.,* Civ. Case No.94--31402--NO (Genesee Co., Mich. 1996)(awarding $2,100,000 to woman who slipped and fell at donut shop injuring her knee; her only recourse for pain relief was to undergo a knee replacement in the future); *Perks v. Ziegelhoffer; Gordon Food Service. Inc.,* 1994 WL 806277, *1 (LRP Jury, Washtenaw Co., Mich 1994)(awarding $1,540,000; plaintiff suffered a fractured patella and a fractured hip requiring future hip replacement when plaintiff's vehicle struck defendant's parked tandem truck); *Slezak v. Marine Midland Bank,* 1992 WL 697461, *1 (LRP Jury, Montgomery Co., N.Y. 1992)(awarding $1,196,000; plaintiff suffered a fractured hip requiring total hip replacement when she slipped and fell at bank owned by defendant); *Ledford v. Cheesequake Village,* 1997 WL 373029, *1 (LRP Jury, Middlesex Co., N.J. 1997) (awarding $843,000; plaintiff suffered fractured hip requiring hip replacement and probable future revision of the hip replacement when she slipped and fell in the defendant's parking lot); *Ornstein v. YMCA,* 1993 WL 421907, *1 (LRP Jury, New York Co., N.Y. 1993)(awarding $818,552; plaintiff suffered fractured hip requiring hip replacement when he slipped and fell in defendant's bathroom); *Logerwell v. Nelson d/b/a Point-No-Point Resort,* 1996 WL 856100, *1 (LRP Jury, Kitsap Co., Wash. 1996)(awarding $801,000; plaintiff suffered fractured hip requiring hip replacement when he slipped and fell on defendant's boat launch); *Zilenziger v. City of New York,* 1997 WL 743635, *1 (LRP Jury, New York County, N.Y. 1997)(awarding $630,000; plaintiff suffered fractured hip requiring hip replacement when he slipped and fell on defendant's sidewalk); *Hagan v. Sun Bank of Mid Florida, N.A.,* 1994 WL 546616, *1 (LRP

Jury, De Soto Co., Fla. 1994)(awarding $563,239; plaintiff suffered fractured hip requiring future hip replacement when she tripped and fell on the sidewalk outside bank·owned by defendant); *Michael v. Armelli, Inc. d/b/a The Waterfalls Lounge & Restaurant,* 1994 WL 547179, *1 (LRP Jury, Broward Co., Fla. 1994)(awarding $550,000; plaintiff suffered a left femoral neck fracture requiring hip replacement when she tripped and fell on steps leading to the parking lot at restaurant owned by defendant); *Sinert v. Olympia & York Development,* 1994 WL 806366, *1 (LRP Jury, Hartford Co., Conn. 1994)(awarding $540,000; plaintiff suffered fractured hip requiring total hip replacement when she slipped and fell on sidewalk outside defendant's office building); *Silver v. Sunny Gourmet. Inc.,* 1993 WL 519738, *1 (LRP Jury, Palm Beach Co., Fla. 1993)(awarding $464,887; plaintiff suffered a fractured shoulder and fractured hip requiring hip replacement when she tripped and fell over a bench located in the foyer of the defendant's restaurant).

Plaintiff urges this Court to consider the panoply of jury awards cited immediately above, emanating from Michigan and *other* jurisdictions. In *Palenkas v. Beaumont Hosp.,* 432 Mich. 527, 443 N.W.2d 354 (1989), the Michigan Supreme Court stated as follows:

> trial courts, in addition to evaluating whether a jury award is supported by the proofs, have conducted a myriad of other inquiries in determining whether remittitur would be proper in a particu-

lar case: 1) whether the verdict "shocks the judicial conscience"; 2) whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact; 3) whether the verdict was within the limits of what reasonable minds would deem just compensation for the injury sustained; 4) whether the amount actually awarded is comparable to awards in similar cases *within the state and in other jurisdictions.* 22 Am. Jur.2d, Damages, §§ 1021-1025, pp. 1067-1075.

*Palenkas,* 432 Mich. at 532, 443 N.W.2d 354. Based on the *Palenkas* decision, quoted above, this Court finds that it may consider awards in similar cases in other jurisdictions.

Applying the standards for the granting of a new trial pursuant to Federal Rule of Civil Procedure 59, this Court holds that a new·trial is *not* warranted. The Court does not find that the jury reached a "seriously erroneous result" such that a new trial would be required. Furthermore, it cannot be said that the proceedings were influenced by prejudice or bias. *See Holmes v. City of Massillon,* 78 F.3d 1041, 1045-46 (6th Cir.1996). Nor can it be said that the verdict was against the weight of the evidence. *See id.* Nevertheless, as discussed below, the Court does find the total award of approximately $1.4 million to be excessive in light of the various cases and corresponding awards cited by *both* plaintiff and defendant. Consequently, remittitur is appropriate and will be ordered.[2]

---

2. Defendant also raises the argument that the verdicts should be set aside and a new trial granted because the panel of four jurors was unconstitutional pursuant to the Seventh Amendment. The Court finds this argument to be wholly lacking in merit. First, there is *no* constitutional right to a particular sized jury in a *civil* case. Defendant acknowledges as much when it states that the Supreme Court "left open" the question whether fewer than six jurors violates the Seventh Amendment, citing *Colgrove v. Battin,* 413 U.S. 149, 159-60, 99 S.Ct. 2448, 37 L.Ed.2d 522 (1973). *See* defendant's brief, p. 17. Second, and just as importantly, defendant expressly stipulated in writing to proceed with the trial with five

(and then four) jurors. *See* July 14, 1999 stipulation to proceed with five jurors and July 20, 1999 stipulation to proceed with four jurors. Before signing said stipulations both parties were advised that the Court would not proceed with the trial unless and until the parties entered into a written stipulation for the reduced jurors. Accordingly, the Court finds that defendant has waived any objection it may now have with respect to the reduced panel of four jurors. Pursuant to Federal Rule of Civil Procedure 48, "[t]he court shall seat a jury of not fewer than six and not more than twelve members....*Unless the parties otherwise stipulate,* (1) the verdict shall be unani-

## (2) REMITTITUR IS APPROPRIATE AND WILL BE ORDERED BECAUSE THE AMOUNT AWARDED IS OUT OF LINE WITH THE GREAT MAJORITY OF AWARDS IN COMPARABLE CASES.

■ The evidence which was submitted at trial clearly demonstrated that plaintiff sustained severe injury. The evidence also abundantly showed that plaintiff suffered great pain during his recuperative and rehabilitative processes and that this pain was a consequence of the injury to his hip. Immediately following the accident, plaintiff was on the ground and screaming and in a lot of pain per the testimony of defendant's employee, Michele Krieger. *See* Transcript, 3-110, attached as Exh. 2 to plaintiff's brief. Plaintiff was put on morphine for the pain. *See* Transcript, 3-211. Two days thereafter, plaintiff underwent a total right hip replacement. During the next four days, plaintiff reportedly had a temperature running to nearly 104 degrees. As a result, plaintiff's doctors discontinued plaintiff's pain medication. *See* Transcript, 3-212. Without the medication, plaintiff testified that he was in "agony." *See id.*

After the operation, the evidence also showed that plaintiff was in great pain when standing or walking. Plaintiff described the pain as "awful." *See* Transcript, 2-116. Throughout the rehabilitation process, plaintiff testified that he began having pain also in his hands, shoulders, hips, wrists, and elbows from the use of the crutches and walker. The therapy also caused stress on his body, resulting in pain in plaintiff's joints. Plaintiff also testified that he found it hard to sleep at night and that some but not all of these symptoms have gone away. *See* Transcript, 3-172 to 3-177, and 3-192).

It was further established that plaintiff had been completely off steroids for his pre-existing arthritic condition prior to the accident for approximately three years. *See* Transcript, 3-172 and 3-192. This fact was confirmed by plaintiff's physician, Dr. Weitzman. *See* Weitzman Depo. attached as Exh. 3 to plaintiff's brief, pp. 16, 26-27, and 34). Dr. Weitzman also testified that "[plaintiff's] disease process seemed to change after the fracture; he became flared up in all of his joints, not just...the hip." *Id.,* p. 17. Dr. Weitzman further opined that "[w]hat happened following the fracture was that his joints became much more painful and much more swollen." *Id.,* p. 19. These symptoms, according to the doctor, were "temporally related[,] [i]n other words, it seemed pretty clear cut that the arthritis flared following the fracture." *Id.,* p. 20.[3]

Plaintiff also testified that the hip replacement surgery permanently affected his gait and everyday living activities. Specifically, plaintiff cannot walk more than one mile and a half without his hip hurting, cannot ride his bicycle as far, and cannot stand for more than 10 to 15 minutes before his hip begins to hurt. *See* Tran-

mous and (2) no verdict shall be taken from a jury reduced in size to fewer than six members." Fed. R. Civ. Proc. 48 (emphasis added). The parties have "otherwise stipulated" in writing. As a result, neither party has cause to attack the verdict under Rule 48. To hold otherwise would render the stipulations meaningless and allow defendant to renege on its implicit promise to proceed without objection with four jurors.

3. It should be noted that following Dr. Weitzman's testimony, this Court raised on its own initiative the issue of whether the doctor's testimony was sufficient to definitely establish plaintiff's claim of aggravation of a preexisting arthritic condition. *See* Transcript 2-124 to 2-126. The Court found that Dr.

Weitzman's "temporally related" testimony was insufficient, in and of itself, to establish causation. Plaintiff strenuously objected to this ruling. Nevertheless, as discussed more fully *infra,* the Court also found that it was proper to allow the jury to consider Dr. Weitzman's testimony as well as plaintiff's lay testimony in connection with the alleged aggravation of plaintiff's pre-existing condition of rheumatoid arthritis. Such testimony *was sufficient* to raise a genuine issue of material fact for the jury's consideration. *See Konieczka v. Mt. Clemens Metal Prods. Co.,* 360 Mich. 500, 503, 104 N.W.2d 202 (1969) (holding that lay testimony is competent evidence as to the condition of a person before and after injury).

script, 3-190 and 3-191. Plaintiff apparently experienced none of these problems prior to the hip injury. *Id.* This was confirmed by plaintiff's wife's testimony. *Id.*, pp. 2-113 to 2-116.

Based on all the evidence presented, the Court concludes that the jury's verdict for plaintiff was well-supported. The evidence was competent and credible. Moreover, plaintiff was entitled to be justly compensated for intangible damages such as pain, suffering, humiliation, distress and anxiety caused by the injury. *See Darby*, 827 F.Supp. at 1299 (holding that "'the assessment of damages, especially for intangible harms such as humiliation and distress, is inescapably judgmental and subjective to a large degree, and to that degree therefore discretionary.....'"). As stated above, a new trial is *not* required, there being no evidence to suggest that the jury's award was punitive, or swayed by passion, bias or prejudice.

The remaining issue concerns the *amount* of damages awarded. From a careful review of the numerous cases cited by both plaintiff and defendant, this Court is of the considered opinion that the amount awarded with respect to plaintiff's non-economic damages is excessive. Of the various cases relied upon by the parties, *only two* awarded the plaintiffs *more than* 1.4 million dollars for injuries sustained as a result of their injuries.

The first case is *Ruff v. Donut Systems. Inc.*, Civ. Case No. 94-31402-NO (Genesee Co., Mich. 1996), in which the Michigan state court jury awarded plaintiff $2,100,-000 to a woman who had slipped and fallen at a donut shop injuring her knee. According to plaintiff, her only recourse for pain relief was to undergo a knee replacement in the future. Unfortunately, the case cited was *reversed*, albeit on other grounds. There is no indication in plaintiff's brief as to the severity of the injuries suffered by the plaintiff in *Ruff.* Nor has plaintiff herein attempted to apprise this Court of the reason for the reversal. As a consequence, this Court does not find *Ruff* persuasive authority for such a high verdict.

Plaintiff also cites *Perks v. Ziegelhoffer Gordon Food Service. Inc.*, 1994 WL 806277, *1 (LRP Jury, Washtenaw Co., Mich 1994), in which the plaintiff therein was awarded $1,540,000. This case also does not provide persuasive authority to substantiate the amounts awarded in the present case. According to the published account of the factual basis for the award in *Perks*,

[a] 35-year-old male window installer suffered a fractured patella; a fractured hip, requiring future replacement; and multiple elbow fractures when his vehicle struck a parked tandem truck operated by the male defendant and owned by the co-defendant food manufacturer. The defendant had parked on the side of the roadway and crossed to assist an accident victim. The plaintiff contended that the defendant parked part way onto the travel portion of the roadway, failed to turn on the flashers of the truck, and failed to place warning triangles on the roadway. The defendant contended that the truck was not on the roadway, that its flashers were operating, and that the plaintiff was distracted by the accident and failed to see the truck. The plaintiff was found 65 percent negligent, and the award was reduced to $380,000.

1994 WL 806277, * 1. The *Perks* case, as is apparent from the quoted passage, concerned a traffic accident and not a simple slip and fall. Furthermore, plaintiff in *Perks* suffered a "fractured patella; a fractured hip, requiring future replacement; and multiple elbow fractures," considerably more impact injuries than the hip injury sustained by plaintiff Meyers.

A review of all the other cases cited by both parties yields a more accurate assessment of the amounts customarily awarded in joint replacement slip and fall cases. The amounts range from $1,196,000 in *Slezak v. Marine Midland Bank, supra*, to $20,037 in *Buben v. Speedway Petroleum Co., supra.* The amount awarded in *Slezak* represents the absolute maximum reasonably awarded in such cases. This Court

therefore finds that the award in the present case should be reduced to fall in line with the *Slezak* precedent.[4] Accordingly, the Court will reduce the jury's award of $1,000,000 for non-economic damages sustained by plaintiff to the present time by $150,000. Similarly, the Court will also reduce the jury's award of $500,000 for non-economic damages reasonably certain to sustain in the future by $150,000. Thus, the total amount to be awarded (before the 5% deduction for plaintiff's own negligence) will be $1,201,400 (i.e., $1,501,400 minus $300,000). After the 5% deduction, plaintiff is ultimately entitled to $1,141,330.

## B. DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)

Defendant renews its motion for judgment as a matter of law initially raised after the close of plaintiff's proofs. The motion is renewed only with respect to the narrow issue of "causation regarding plaintiff's allegation of aggravated arthritis." *See* defendant's brief, p. 17. Specifically, defendant argues that the expert testimony of plaintiff's doctor, Dr. Weitzman, regarding a "temporal" relationship between an accident and a separate injury does not establish proximate causation. In addition, defendant maintains that plaintiff's own lay testimony regarding how he felt is also insufficient to establish aggravation of his arthritic condition.

■ As the Court specifically noted during the trial, the Court is in agreement with defendant that Dr. Weitzman's testimony, in and of itself, is insufficient to establish proximate causation. However, as the Court also ruled, such testimony in tandem with plaintiff's own lay testimony was sufficient to present the proximate cause issue for the jury's consideration. Plaintiff certainly was entitled to present his own personal testimony relating to *how*

he *felt* before and after his injury. It is well-settled in Michigan that lay testimony is competent evidence as to the condition of a person before and after injury. *Konieczka v. Mt. Clemens Metal Prods. Co.*, 360 Mich. 500, 503, 104 N.W.2d 202 (1969) (citing cases).

Defendant contends that it was inappropriate to allow plaintiff to present his theory of "aggravation," together with the corresponding instruction, to the jury. *See* Jury Instruction No. 28 (Measure of Damages-Personal). Defendant cites several cases in an attempt to support its position that plaintiff's testimony was insufficient as a matter of law to establish causation. *See, e.g., American & Foreign Ins. Co. v. Gen. Elec. Co.*, 45 F.3d 135, 140 (6th Cir. 1995) and *Baker v. Sears, Roebuck and Co.*, 1994 WL 702235, *2 (6th Cir. Oct. 20, 1994) (slip op.).

In *American*, plaintiff insurance-company brought a products liability action against the manufacturer of a "circuit-breaker" which allegedly had caused a fire at a Michigan high school. *See id.* at 136. The appellate court affirmed the lower court's ruling that plaintiff had failed to establish that its expert's opinions were reliable or relevant scientific knowledge admissible pursuant to Federal Rule of Evidence 702. *See id.* at 139.The court in *American* further opined that

[c]ausation cannot be established solely by conjecture, speculation, or surmise. *See Jordan v. Whiting Corp.*, 396 Mich. 145, 240 N.W.2d 468, 471 (1976). Like all elements of a civil action, causation must be established by the preponderance of the evidence. "Of all the elements necessary to support recovery in a tort action, causation is the most susceptible to summary determination...." *Davis v. Thornton*, 384 Mich. 138, 180 N.W.2d 11, 15 (1970). The question of whether sufficient evidence has been introduced to

---

4. It should be emphasized that even though plaintiff has looked outside the jurisdiction of Michigan and found an award as high as $1,196,000, this Court may consider such an

award pursuant to *Palenkas v. Beaumont Hosp.*, 432 Mich. 527, 532, 443 N.W.2d 354 (1989).

sustain a plaintiff's claim of causation is a question of law. *Detroit Bank & Trust Co. v. Michigan Dep't of State Highways*, 55 Mich.App. 131, 222 N.W.2d 59, 62 (1974).

\* \* \* \* \* \*

Review of the trial record reveals that [plaintiff] American can not, without speculation, establish a causal connection between a manufacturing defect and the fire.

*American*, 45 F.3d at 140.

In *Baker*, an unpublished opinion, plaintiff filed a tort action after falling down stairs in defendant's store. *See id.*, \*1, 1994 WL 702235. Plaintiff suffered head injuries and could remember nothing of the incident. As a result, plaintiff attempted to rely on expert testimony relating to hypothetical situations which could have caused plaintiff's fall. The appellate court rejected such expert testimony for the following reasons:

> First, "expert opinion based upon only hypothetical situations is not enough to demonstrate a legitimate causal connection between a defect and injury...[because] 'there must be facts in evidence to support the opinion testimony of an expert.'" *Skinner v. Square D Co.*, 445 Mich. 153, 173, 516 N.W.2d 475 (1994) (citations omitted). Second, while it is possible that the condition of the staircase cited by Baker's expert as being defective could have caused the fall, by the same token, there are other possibilities.

*Baker*, 1994 WL 702235, \*2.

While this Court acknowledges the decisions in *American* and *Baker*, it does not find that allowing the jurors to consider possible aggravation of plaintiff's pre-existing condition in the case at bar was inappropriate. Unlike the situation presented in *American*, plaintiff herein was not attempting to establish by scientific evidence the original cause of a fire. Instead, plaintiff sought to show that his pre-existing condition was aggravated or worsened as a result of his serious hip injury. This Court does not find that plaintiff's assertion of

aggravation is subject to the admonition in *American* that causation not be proven "by conjecture, speculation, or surmise." Although, as stated, Dr. Weitzman's testimony does not, in and of itself, serve to definitely establish causation, it was proper to allow the jury to consider such testimony as well as plaintiff's lay testimony in connection with the alleged aggravation of plaintiff's previous condition of rheumatoid arthritis.

*Baker* is equally unavailing. In that case, the plaintiff hit her head and as a consequence had no recollection of the event which caused her injuries. In that situation, it clearly would be improper for a plaintiff to rely solely upon the hypothetical conjecture of a proposed expert to establish the defects allegedly existing on defendant's property. In the case at bar, under Michigan law, plaintiff is competent to provide his own lay testimony as to his condition *before and after* injury. Plaintiff Meyers is *not* relying on Dr. Weitzman, as was the plaintiff in *Baker*, to testify *for him*. Rather, plaintiff was entitled to and did testify on his own behalf.

■ Viewing the evidence in the light most favorable to the plaintiff, as nonmovant, and giving plaintiff the benefit of all reasonable inferences, it cannot be said that plaintiff failed to present sufficient evidence to raise a material issue of fact as to the aggravation of his rheumatoid arthritis for the jury. *See Jackson v. Quanex Corp.*, 191 F.3d at 657. As stated, the decision to grant judgment as a matter of law is appropriate only when "'there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ.'" *Id.* In the case at bar, defendant has not overcome this burden. There clearly was sufficient evidence upon which reasonable minds could have differed on the issue of whether plaintiff's slip and fall in defendant's store caused an aggravation of plaintiff's pre-existing rheumatoid arthritic condition.

Accordingly, the Court will deny defendant's renewed motion for judgment as a matter of law with respect to causation regarding plaintiff's allegation of aggravated arthritis.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant's motion for new trial is **DENIED**;

**IT IS FURTHER ORDERED** that defendant's motion for remittitur is **GRANTED**; the total award (before the 5% reduction for plaintiff's comparative negligence) shall be reduced by $300,000, for the reasons as discussed hereinabove;

**IT IS FURTHER ORDERED** that defendant's renewed motion for judgment as a matter of law is **DENIED**;

An amended judgment shall be entered forthwith in accordance with this memorandum opinion and order.

**SO ORDERED.**

### AMENDED JUDGMENT

The above-entitled action having come before the Court, the Honorable Paul V. Gadola, presiding, the issues having been duly considered, a decision having been duly rendered as a result of the jury's verdicts published on July 20, 1999, and the Court having denied defendant's motion for new trial, having granted defendant's motion for remittitur, and having denied defendant's renewed motion for judgment as a matter of law,

**IT IS HEREBY ORDERED AND ADJUDGED** that judgment be entered in favor of plaintiff William J. Meyers and against defendant Wal-Mart Stores, East, Inc.;

**IT IS FURTHER ORDERED AND ADJUDGED** that the jury's award of $1,000,000 for non-economic damages sustained by plaintiff to the present time be **REDUCED** by $150,000;

**IT IS FURTHER ORDERED AND ADJUDGED** that the jury's award of $500,000 for non-economic damages reasonably certain to sustain in the future also be **REDUCED** by $150,000;

**IT IS FURTHER ORDERED AND ADJUDGED** that plaintiff be awarded economic damages in the amount of $1,400, as originally determined by the jury;

**IT IS FURTHER ORDERED AND ADJUDGED** that the total amount to be awarded is *$1,141,330*, i.e., $1,201,400 ($1,501,400 originally awarded minus $150,000 minus $150,000) minus five percent, the jury having allocated a five percent deduction for plaintiff's comparative negligence; said amount is due and owing to plaintiff forthwith;

**IT IS FURTHER ORDERED AND ADJUDGED** that plaintiff be awarded post-judgment interest, if any, to be calculated at the rate in accordance with the provisions of 28 U.S.C. § 1961;

**IT IS FURTHER ORDERED** that plaintiff may apply for applicable costs, interest, and/or attorney's fees as allowed pursuant to the Federal Rules of Civil Procedure and the Local Rules; and

**IT IS FURTHER ORDERED** that the Clerk serve a copy of this Amended Judgment by United States mail on counsel for plaintiff and on counsel for defendant.