HERMAN v. FORD MOTOR CO.

1. WORKMEN'S COMPENSATION — DEPARTMENT OF LABOR AND INDUSTRY—INFERENCES.

In determining factual issues the department of labor and industry may draw reasonable inferences from established facts the same as a jury in the trial of an action at law.

2. SAME—INFERENCES—HERNIA—TOTAL DISABILITY—MEDICAL TESTIMONY.

Inference drawn by department of labor and industry that employee's hernial condition, resulting in total disability for period covered by award, was worse subsequent to accidental slipping and falling while carrying 150 pounds of stock than prior thereto *held*, justified from testimony of doctors who had examined employee.

Appeal from Department of Labor and Industry. Submitted January 7, 1937. (Docket No. 50, Calendar No. 39,203). Decided March 1, 1937.

Mike Herman presented his claim for compensation against Ford Motor Company for personal injuries suffered in defendant's employ. Award to plaintiff. Defendant appeals. Affirmed.

*McGregor & Hospers* (*Richard C. Fruit*, of counsel), for plaintiff.

*Tuttle & Tuttle* (*E. C. Starkey*, of counsel), for defendant.

NORTH, J.    Defendant has appealed from an award of compensation for total disability made to plaintiff.  In April, 1932, when plaintiff re-entered defendant's employment, an examination by a doctor employed by defendant disclosed that plaintiff had a hernia on the left side.  Notwithstanding this he was recommended for employment at moderate or light work.  On or about August 15, 1932, while carrying a pan of stock, crank shaft caps, weighing approximately 150 pounds, plaintiff slipped and fell to the floor.  Immediately he suffered pain in the region of his hernia and in his back.  Upon reporting to his foreman he was sent to defendant's medical department.  He was given some pills and sent back to his place of employment but was assigned to work which did not require him to carry stock as he had been doing.  He was given lighter work and he continued this employment until September 28, 1932, when he was laid off.  Before the award was made plaintiff had been operated upon and it is conceded by appellee his disability terminated September 24, 1935.  The award of $18 per week for total disability was from September 29, 1932, to September 24, 1935.

The only question presented for review is this:

"Is the conclusion of the department that the plaintiff was totally disabled based upon facts established by the evidence?"

Determination turns upon whether this record contains testimony tending to sustain the department's conclusion. In determining factual issues the department may draw reasonable inferences from established facts the same as a jury in the trial of a suit at law. The record shows that plaintiff was capable of doing a man's work prior to his accident. Testimony hereinafter quoted is to the effect that he was not able to do so after the accident, instead that he has not been able to work at all since he was laid off from the light work he did for defendant after the accident. That the hernial condition was worse subsequent to the accident may be reasonably inferred from the testimony of the doctors. Dr. Shute, who examined plaintiff about four months prior to the accident, gave testimony indicating that plaintiff's hernia then was not large or of a serious character. He said plaintiff might not have known he had a hernia unless the protrusion was apparent, and when asked if plaintiff had "a definite hernia" at the time of the examination the doctor answered:

"If it had been a very large or extensive hernia I would have left the light work and stricken the moderate out."

Dr. Burton testified that when, after the accident, he examined plaintiff he was "then complaining of a knot, a lump he called it, in the left lower inguinal region." And the doctor found a hernia the size of a walnut.

Plaintiff testified:

"I slip in that oil and water. I fell down on the floor, see. I fell on this side (indicating left side), hurt my left side. After I got some pain in my left side, I can't work after, I can't carry. * * * After I get on the job my work was faster, I can't work like before, too much sore. * * * Back and left side here (indicating), on the left side. * * *

"Q. Then what happened?

"A. Well, after, see, he take a man, another man on my machine and he gave me another job, put me on the job I don't need to carry that stock. * * *

"Q. Did you ever have any pain in your side there before this happened?

"A. No, I never get any pain.

"Q. Did you ever have any trouble there before on your side?

"A. No, I no get trouble.

"Q. Where have you worked since you left the Ford Motor Company?

"A. No place. I didn't work no place.

"Q. Why not?

"A. I can't get a job. I go to get a job, I got a rupture, no factories can hire me. * * *

"Q. Why didn't you get a job at Ternstedt's?

"A. Die casting. I got a rupture. I can't get a job. * * * Before I got the accident I worked die cast machine."

Review of this record discloses testimony from which the department could and did find that plaintiff's hernial condition was aggravated by the accident and to such an extent that during the period covered by the award plaintiff was wholly disabled. The award is affirmed. Costs to appellee.

FEAD, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.