*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0233P (6th Cir.)
File Name: 01a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

WILLIAM J. MEYERS,
      *Plaintiff-Appellee/*
      *Cross-Appellant,*

      Nos. 00-1046/1078

    *v.*

WAL-MART STORES, EAST,
INC., d/b/a Wal-Mart,
      *Defendant-Appellant/*
      *Cross-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 97-40517—Paul V. Gadola, District Judge.

Argued: June 6, 2001

Decided and Filed: July 20, 2001

Before: GUY, BOGGS, and GILMAN, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Jeffrey S. Sutton, JONES, DAY, REAVIS &
POGUE, Columbus, Ohio, for Appellant. Linda M. Galante,
MAZUR, MORGAN, MEYERS & KITTEL, Detroit,
Michigan, for Appellee. **ON BRIEF:** Jeffrey S. Sutton,

JONES, DAY, REAVIS & POGUE, Columbus, Ohio, Ronald E. Westen, Robert Patrick George, LUPO & KOCZKUR, Detroit, Michigan, Melanie P. Sarwal, WAL-MART STORES, INC., Bentonville, Arkansas, for Appellant. Linda M. Galante, Jeffrey T. Meyers, MAZUR, MORGAN, MEYERS & KITTEL, Detroit, Michigan, for Appellee.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge.   William J. Meyers, a 65-year-old claimant, slipped and fell on loose cardboard in the empty-box area at a Sam's Club store.  The fall fractured his hip, causing him to undergo hip-replacement surgery.  Meyers's rehabilitation process greatly aggravated his preexisting arthritic condition.

After a nine-day jury trial, during which three of the original seven jurors were dismissed by the district court with the consent of both parties, this negligence action was submitted to the remaining four jurors.  The jury returned with a verdict in favor of Meyers in the amount of $1,501,400, with a finding of 5% comparative negligence on his part.  This reduced his damages to $1,426,330, which the district court further reduced by $300,000 in response to the defendant's motion for a remittitur, leaving a net verdict of $1,126,330.

Wal-Mart, as the owner of the Sam's Club store, now appeals on various grounds, arguing that (1) the district court erred in permitting Meyers's "aggravation" claim to go to the jury, (2) there was insufficient evidence to support the jury's verdict, (3) the four-person jury was unconstitutional, and (4) the district court should have remitted the verdict by more than $300,000.  Meyers cross-appealed, challenging the $300,000 remittitur.  For the reasons set forth below, we AFFIRM the judgment of the district court.

## I.  BACKGROUND

### A.  Factual background

On July 8, 1997, Meyers and his wife went shopping at the Sam's Club store in Southgate, Michigan. While his wife was waiting in the checkout line, Meyers walked over to the empty-box area to find a box in which to place the couple's purchases. Meyers was initially carrying a cup of frozen custard, but set the cup down just before entering the box area. He moved several boxes in order to locate one of suitable size. Once he found a box that he wanted, he turned around, grabbed his custard, and began to leave the box area, at which point he tripped on some loose cardboard and fell. Meyers claims that his injuries and subsequent damages all flow from this incident.

### B.  Trial background

Meyers filed suit in state court on December 30, 1997, alleging that his injuries were caused by Wal-Mart's negligence. Wal-Mart removed the action to federal court based upon diversity of citizenship under 28 U.S.C. § 1332. At trial, Wal-Mart stipulated that Meyers slipped or tripped on cardboard lying on the floor in the box area. Several Wal-Mart employees testified that, at the time of the accident, there were boxes left all over the box area because there was no other place to put them, that there was loose cardboard under the boxes, and that cleanup was done only on a "catch as catch can" basis. Two of the employees even admitted that the condition of the box area was dangerous.

The uncontradicted evidence established that Meyers fractured his hip as a result of the fall. Hip-replacement surgery was required in order to restore his ability to walk, and he suffered a 104-degree fever for four days after the operation. As a result of the high temperature, his doctor discontinued all pain medication, causing Meyers to be "in agony" during this time. Meyers continued to feel pain after he began outpatient physical therapy. This therapy involved standing and walking exercises, including the use of crutches

and walkers. Meyers testified that the exercises and supportive devices caused him to feel pain in his hands, shoulders, hips, wrists, elbows, and other joints. The pain made it hard for him to sleep at night.

Although some of these symptoms eventually abated, others still remain. Meyers testified that the hip-replacement surgery permanently affected his gait and his everyday living activities. He has been unable, for example, to stand for more than 10 to 15 minutes at a time or to walk more than a mile-and-a-half without feeling pain in his hip, nor can he ride his bicycle as far as he was once able to do.

Prior to the accident, Meyers had suffered from rheumatoid arthritis for many years, but had not needed steroid treatment since 1993. His treating physician, Dr. Raymond Weitzman, testified that Meyers

went for a long period without [steroids] before he fell and fractured his hip . . . . He was not really going through flare ups for the few years prior to the fracture of his hip . . . . I tapered the Prednisone so that between 1993 and September of 1997 he was off all steroids . . . . His disease, on the gold [a type of medical treatment for rheumatoid arthritis involving gold salts], actually did well, and he seemed to stabilize.

Dr. Weitzman also confirmed that Meyers's arthritis flared up after his fall, noting that Meyers's "disease process seemed to change after the fracture; he became flared up in all of his joints, not just talking about the hip." He also pointed out that these symptoms appeared to be temporally related to Meyers's hip injury. "In other words, it seemed pretty clear cut that the arthritis flared following the fracture." Moreover, Dr. Weitzman testified that the gold-salts treatment he had been using for Meyers's arthritic condition lost its effectiveness after the accident, even after he increased the dosage and frequency of the shots. This required a return to injecting Meyers with steroids such as Prednisone and Cortisone.

### E.  The district court's failure to offer Meyers the option of accepting the remittitur or receiving a new trial

Prior to oral argument on appeal, we asked both parties to submit a brief stating their position regarding the district court's failure to provide Meyers with the option of either submitting to a new trial or accepting the amount of damages that the district court considered justified. *See Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1396 (6th Cir. 1990) ("[A] forced remittitur without the offer of the option of a new trial on the issue of damages constitutes error, requiring this court to reverse and reinstate the verdict."); *Brewer v. Uniroyal, Inc.*, 498 F.2d 973, 976 (6th Cir. 1974) ("[T]he District Court must offer the party awarded damages the choice of a new trial or the amount of the Court's remittitur."). Meyers responded by stating that, if given the choice, he would accept the remittitur.

We also asked Meyers's counsel at the oral argument itself whether Meyers was willing to forego his right to a new trial by accepting the district court's remittitur. Counsel again confirmed that this was her client's choice. Accordingly, we regard this error on the part of the district court as having been waived. *See Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1212 (8th Cir. 1999) (treating the district court's error in failing to offer the plaintiff a new trial/remittitur election as waived when the "[p]laintiff has represented through her attorneys that she will waive her right to a new trial if given the choice"). Meyers's cross-appeal challenging the $300,000 remittitur is therefore dismissed as moot.

### III.  CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.

*Cf. Hundley v. Milner Hotel Mgmt. Co.,* 114 F. Supp. 206, 210 (W.D. Ky. 1953) (holding that the defendant could not complain, in its motion for judgment notwithstanding the verdict or, in the alternative, for new trial, that the introduction of certain love letters as evidence caused the jury to render its decision based on passion and prejudice when the defendant deliberately introduced the love letters into evidence in the first place).

### 3. Support for the comparative negligence finding

Finally, Wal-Mart argues that Meyers's award was excessive because the evidence did not support the jury's finding that Meyers was only 5% at fault for his injuries. Instead, argues Wal-Mart, "abundant evidence supported a much higher negligence ruling" for Meyers, and, therefore, a much lower negligence ruling for Wal-Mart. We will not set aside the district court's determination that Wal-Mart's fault apportionment was not excessive, however, absent a clear abuse of discretion. *See Padgett v. S. Ry. Co.*, 396 F.2d 303, 309 (6th Cir. 1968); *see also Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 385 (5th Cir. 1985) (specifically applying a clearly erroneous standard of review to the jury's apportionment of fault).

In the present case, there was sufficient evidence to support the jury's finding that Wal-Mart was 95% at fault for Meyers's injuries. See the discussion in Part II.B. above regarding the evidence supporting the jury's verdict, especially the proof acknowledging the lack of regular maintenance in the box area despite Wal-Mart's awareness of the cardboard clutter, and the admission by two of its employees that the area was a hazard to customers. Given all of this testimony, we cannot say that the district court abused its discretion in upholding the jury's apportionment of fault. The district court's decision not to remit the jury's verdict by an additional amount to account for a greater degree of fault on the part of Meyers, accordingly, is affirmed.

After a nine-day trial, the jury returned with a unanimous verdict in favor of Meyers in the amount of $1,501,400, with a finding of 5% comparative negligence on his part. Because of the comparative negligence allocation, Meyers's damages were reduced to $1,426,330. The final jury was composed of only four members, because three of the original seven jurors had been excused by the district court with the written consent of both parties.

Wal-Mart filed several post-trial motions. The district court rejected Wal-Mart's motion for judgment as a matter of law regarding Meyers's claim for aggravation of his preexisting arthritic condition, as well as its motion for a new trial based on challenges to the sufficiency of the evidence in support of the award and the constitutionality of the four-person jury. *See Meyers v. Wal-Mart Stores, East, Inc.,* 77 F. Supp. 2d 826, 830-32, 835-37 (E.D. Mich. 1999). However, the court granted Wal-Mart's motion to remit the verdict based upon a range of allegedly comparable cases. *See id.* at 833-35. Accordingly, the district court remitted the verdict by $300,000 to reach an amount approximating that awarded in *Slezak v. Marine Midland Bank*, JVR No. 146161, 1992 WL 697461, at *1 (N.Y. App. Div. 1992) (awarding $1,196,000 to a plaintiff who required a hip replacement when she slipped and fell at the defendant's bank). This remittitur, which resulted in a net award to Meyers of $1,126,330, was made without offering him the choice of either accepting the remittitur or proceeding to a new trial.

This timely appeal and cross-appeal followed.

## II. ANALYSIS

### A. Aggravation of Meyers's preexisting condition of rheumatoid arthritis

A motion for judgment as a matter of law "may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence." *McJunkin Corp. v. Mechs., Inc.*, 888 F.2d 481, 486 (6th Cir. 1989). An appeals court is not to "weigh the evidence, pass on the

credibility of witnesses, or substitute its judgment for that of the jury." *Toth v. Yoder Co.*, 749 F.2d 1190, 1194 (6th Cir. 1984). Instead, we must view the evidence in the light most favorable to the opposing party, drawing all reasonable inferences in his favor. *See id.*

Wal-Mart contends that the district court erred in allowing the jury to consider Meyers's claim that the hip injury aggravated his arthritic condition. According to Wal-Mart, the evidence presented to the jury failed to support Meyers's claim for two reasons: (1) expert testimony about a "temporal" relationship between an accident and a preexisting condition is not sufficient to establish proximate cause, and (2) Meyers's lay testimony alone cannot establish a medical connection between his fall and the aggravation of his arthritis. Although we agree with Wal-Mart's separate propositions in the abstract, we conclude that the combination of both expert and lay testimony is sufficient under Michigan law to present a triable issue for the jury. *See Konieczka v. Mt. Clemens Metal Prods. Co.*, 104 N.W.2d 202, 206 (Mich. 1960) (holding that the testimony of lay witnesses that Konieczka suffered from anxiety after, but not before, her automobile accident, when combined with medical testimony that the accident "could have been a precipitating factor of Mrs. Konieczka's involuntary depression," was sufficient evidence to support the heightened damages received by Konieczka on the basis that the accident precipitated her subsequent anxiety).

Meyers did not claim that the fall caused his rheumatoid arthritis, but rather that the fall exacerbated his preexisting arthritic condition. *See Herman v. Ford Motor Co.*, 271 N.W. 573, 574 (Mich. 1937) (awarding damages under the Workers' Compensation Act where a preexisting hernia became disabling after the plaintiff fell at work). Under Michigan law, "'before and after' lay testimony is competent evidence" on the issue of damages. *See Konieczka*, 104 N.W.2d at 204.

854 F.2d 24, 27 (3d Cir. 1988). Given the highly deferential standard of review accorded to the determination of whether a jury's verdict is excessive, and given the district court's well-reasoned and comprehensive analysis in the case before us, we will defer to its evaluation. Accordingly, we affirm the district court's $300,000 remittitur.

### 2. Lack of passion or prejudice on the part of the jury

Wal-Mart raises the related argument that the damage award was excessive because of the the alleged "improper passion and prejudice" on the part of the jury. *See Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 424 (6th Cir. 1999) (*"In the absence of undue passion and prejudice, we review for abuse of discretion the district court's refusal to grant a new trial based on excessive damages or a remittitur."*). Specifically, Wal-Mart argues that "this was a sympathetic claimant, not because of the fall at Sam's Club but because of the wide range of serious ailments he had already suffered before the accident and that he then suffered the two years after it." It claims that evidence about Meyers's "unfortunate litany of prior medical problems" unfairly prejudiced the jury for Meyers and against Wal-Mart.

We disagree. As the district court pointed out, there is "no evidence to suggest that the jury's award was punitive, or swayed by passion, bias or prejudice." *Meyers v. Wal-Mart Stores, East, Inc.,* 77 F. Supp. 2d 826, 834 (E.D. Mich. 1999). Meyers never made any disparaging or improper statements about or against Wal-Mart, and even referred to all the people involved in this matter as "nice people." Moreover, the record suggests that it was Wal-Mart who repeatedly stressed Meyers's "unfortunate litany of prior medical problems," presumably in order to support its argument that Meyers would have suffered medical problems regardless of his fall. Having emphasized Meyers's fragile condition at trial, Wal-Mart cannot now complain that the jury relied upon this testimony in determining that Meyers suffered enhanced injuries from the fall due to his preexisting medical condition.

The district court, however, distinguished *Ruff* on the basis that "there is no indication in plaintiff's brief as to the severity of the injuries suffered by the plaintiff in *Ruff.*" *Meyers*, 77 F. Supp. 2d at 834. It then distinguished *Perks* on the basis that *Perks* "concerned a traffic accident and not a simple slip and fall" and involved "considerably more impact injuries than the hip injury sustained by plaintiff Meyers." *Id.*

After distinguishing *Ruff* and *Perks*, the district court chose the New York case of *Slezak v. Marine Midland Bank*, JVR No. 146161, 1992 WL 697461, at *1 (N.Y. 1992) (awarding $1,196,000 to a plaintiff who suffered a fractured hip when she slipped and fell on the defendant's premises, requiring a total hip replacement as a result), as a comparable case representing the upper limit of a reasonable jury verdict. It accordingly found that "the award in the present case should be reduced to fall in line with the *Slezak* precedent." *Meyers*, 77 F. Supp. 2d at 835.

We find no error in the district court's reliance on *Slezak* because of its similarities to the case before us and because, contrary to the arguments of Wal-Mart, Michigan law does allow the consideration of out-of-state cases when using comparables to evaluate the reasonableness of a damage award. *See Palenkas v. Beaumont Hosp.*, 443 N.W.2d 354, 356 (Mich. 1989) (allowing the consideration of "whether the amount actually awarded is comparable to awards in similar cases within the state and in other jurisdictions"). Moreover, given the comparable damages awarded in *Slezak* and in the other cases cited by the district court, as well as the amount of inflation that has occurred in the interim, the award given to Meyers is not so large as to shock our judicial conscience. *See Thompson v. Nat'l R.R. Passenger Corp.*, 621 F.2d 814, 827 (6th Cir. 1980) ("The appellate court will only consider whether the trial court abused its discretion by granting an award so large as to shock the judicial conscience.").

We also note that the district court "is in the best position to evaluate the evidence and assess whether the jury's verdict is rationally based." *Rivera v. Virgin Islands Hous. Auth.*,

Meyers did not rely solely upon either the testimony of his treating physician or upon his own lay testimony to establish the aggravation of his preexisting condition. Instead, he proffered the combined testimony of both to support his claim. First, Dr. Weitzman opined as a medical expert that Meyers had a preexisting arthritic condition. He also testified that, after the injury, Meyers's rheumatoid arthritis increased in severity. Moreover, Dr. Weitzman noted that the entire disease process seemed to change after Meyers suffered his hip injury, causing all of his joints to be adversely affected. This change in the disease process, according to Dr. Weitzman, required Meyers to be treated with steroids even though he had been completely off steroids for the three years prior to his injury.

Next, Meyers testified as a lay witness that his arthritis increased in severity after the accident. *See Konieczka*, 104 N.W.2d at 204 (citing a long list of cases holding that "before and after" lay witness testimony is competent evidence on the issue of damages). His use of crutches and the walker during the rehabilitation process caused him to experience pain in his hands, shoulders, hips, wrists, elbows, ankles, and knees—pain that he did not have prior to the accident. In addition, Meyers said that, after becoming injured, he found it hard to sleep at night. This combination of expert and lay testimony provided a basis for a reasonable jury to conclude that the injury aggravated Meyers's preexisting arthritic condition. *See id.* at 206.

Wal-Mart, however, argues that expert testimony establishing nothing more than a "temporal relationship" cannot suffice to prove the causation of an injury. In support of this proposition, Wal-Mart cites *Hasler v. United States*, 718 F.2d 202 (6th Cir. 1983), in which this court rejected the district court's finding of liability where the plaintiff presented only temporal evidence that she developed rheumatoid arthritis ten days after she received a swine flu vaccination.

The key issue in *Hasler*, however, was whether temporal evidence alone was sufficient to establish that the swine flu vaccination caused the onset of the plaintiff's new disease, not whether the vaccination exacerbated a known preexisting condition. Unlike in *Hasler*, there is no question that Meyers was injured and required medical treatment as a result of the incident in question. There was also no question that Meyers had a preexisting medical condition. Moreover, the medical testimony established that this specific preexisting condition, in turn, could cause him to experience severe collateral effects from a hip injury, with Dr. Weizman pointing out how the entire process of Meyers's arthritic disease seemed to change after the injury. Specifically, Dr. Weitzman testified that the "increased activity can cause" a flare-up of Meyers's preexisting rheumatoid arthritis.

There was thus a "logical sequence of cause and effect" between the accident and the aggravation of Meyers's arthritic condition. *See Kaminski v. Grand Trunk W. R.R.*, 79 N.W.2d 899, 902 (Mich. 1956) (holding that evidence about the position of the train before and after an accident, the construction of a nearby metal cart, and the sound of the crash, was sufficient to create a question of fact as to the negligence of the railroad in an accident that allegedly occurred when the train struck the metal cart, causing the cart to move and strike the plaintiff, even though the plaintiff was unable to visually identify the cause of the actual collision). We consequently find *Hasler* distinguishable from the circumstances of the present case.

Given the combination of Dr. Weitzman's medical testimony and Meyers's lay testimony, we are of the opinion that Meyers presented sufficient evidence for reasonable minds to "differ as to the conclusions to be drawn from the evidence." *McJunkin Corp.*, 888 F.2d at 486. Accordingly, the district court did not err in permitting Meyers's claim regarding the aggravation of his preexisting rheumatoid arthritis to be submitted to the jury.

appraisals." *Padgett v. S. Ry. Co.*, 396 F.2d 303, 309 (6th Cir. 1968) (citations omitted).

### 1. Cases supporting the size of the jury award

Both Wal-Mart and Meyers have challenged on appeal the district court's remittitur of the jury award, arguing, respectively, that the remittitur should have been higher, or that the award should not have been remitted at all. Wal-Mart argues that the remittitur was out of line with the damage awards given in comparable Michigan cases, while Meyers has presented allegedly comparable cases in which the plaintiffs received even greater awards.

In deciding to grant a remittitur of $300,000, the district court examined a wide range of cases, both from within Michigan and from outside the state. *See Meyers v. Wal-Mart Stores, East, Inc.,* 77 F. Supp. 2d 826, 830-32 (E.D. Mich. 1999). The district court first evaluated the applicability of the cases cited by Wal-Mart. *See id.* at 830-31 (describing seven cases in which lower awards were given for plaintiffs who, as a result of their falls, required hip replacements). It next examined the applicability of the cases cited by Meyers. *See id.* at 831-32 (listing eleven cases in which damages comparable to the one awarded to Meyers were given).

In two of the cases cited by Meyers, the plaintiffs received even greater damages than that awarded in the present case. *See Ruff v. Donut Sys., Inc.*, Civ. Case No. 94-31402-NO, 1996 WL 696318, at *1 (LRP Jury, Genesee Co., Mich. 1996) (awarding $2,100,000 to a woman who injured her knee at a donut shop, where the only recourse to relieve her pain was to undergo a future knee replacement); *Perks v. Ziegelhoffer Gordon Food Serv., Inc.*, No. 92-7439-NI, 1994 WL 806277, at *1 (LRP Jury, Washtenaw Co., Mich. 1994) (awarding $1,540,000 to a plaintiff who suffered a fractured patella, multiple elbow fractures, and a fractured hip that required a future hip replacement, all resulting from an accident in which the plaintiff's vehicle struck the defendant's parked tandem truck).

zero by waiving a jury trial altogether and having their controversy decided by the court.

We also note that Wal-Mart could have averted the four-person jury trial simply by refusing to stipulate to the reduced size. The record reflects that the district court expressly gave Wal-Mart this choice. Instead, both parties voluntarily filed a written stipulation to proceed with only four jurors. *See Meyers v. Wal-Mart Stores, East, Inc.,* 77 F. Supp. 2d 826, 827 n.1 (E.D. Mich. 1999). We accordingly regard Wal-Mart's objection as waived. *See Weiss v. Hodge*, 567 N.W.2d 468, 475 (Mich. Ct. App. 1997) ("Where, as here, parties stipulate an arrangement that limits one party's rights to less than that which is otherwise required, that party may not later complain on appeal about this restriction."); *cf. Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995) ("The Seventh Amendment right to a civil jury is not absolute and may be waived if the request for a jury was not timely.").

In light of Wal-Mart's stipulation, the language of Rule 48, and the absence of case law in support of Wal-Mart's argument, we conclude that the district court did not err in allowing the case to proceed with a four-person jury. Wal-Mart's Seventh Amendment argument to the contrary is therefore without merit.

## D.   Alleged excessiveness of the jury's verdict

Wal-Mart's final challenges relate to the failure of the district court to reduce the jury's verdict by more than $300,000. With regard to jury verdicts, this court has held that an award will not be held excessive "if the verdict is within the range of proof and the jury was properly instructed." *Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc.*, 948 F.2d 271, 278 (6th Cir. 1991). In evaluating the jury award, the primary consideration is whether the award is within the range of proof. "[T]he determination of whether a jury's verdict is excessive is resolved by the discretionary consideration of the trial judge. Absent clear abuse of discretion, appellate courts will not make their own

## B.   Sufficiency of the evidence in support of Meyers's award

A district court's decision to deny a motion for a new trial will not be set aside unless the court abuses its discretion. *See Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). Such an abuse will be found only if we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* "The amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts." *Stevens v. Edward C. Levy Co.,* 135 N.W.2d 414, 417 (Mich. 1965).

In the case before us, there was more than sufficient evidence to support the jury's verdict. First, the jurors were presented with evidence upon which they could reasonably conclude that Wal-Mart was negligent in maintaining its premises. Wal-Mart stipulated to the fact that Meyers slipped or tripped on cardboard lying on the floor. Several of its employees testified that the boxes were left all over the box area because there was no place else to put them, that there was loose cardboard under the boxes, and that cleanup was done only on a "catch as catch can" basis. In addition, one of Wal-Mart's employees conceded that letting customers go into the area to obtain boxes was an "accident waiting to happen," and another said that the disorganized boxes could be a "trip and fall hazard" to customers.

There was also sufficient evidence for a reasonable juror to conclude that Meyers suffered extensive pain as a direct result of his injury. Immediately after the accident, a Wal-Mart employee saw Meyers rolling on the floor screaming. The employee testified that Meyers appeared to be in a great amount of pain. Meyers also had to undergo a total hip replacement as a result of his fall. Because of the high fever he experienced immediately after the hip replacement, Meyers's use of morphine had to be discontinued. This forced him to recuperate from a major operation without any pain relief, a process that caused him to experience "tremendous pain" and "agony."

The evidence also demonstrated that Meyers suffered a great amount of pain due to the rehabilitative therapy required as a result of his injuries, more so than would typically be the case. Meyers's physician testified that "[w]hat happened following the fracture was that his joints became much more painful and much more swollen." As a result of this change in the arthritic disease process, Meyers had to return to being treated with steroids, a course of treatment that had been discontinued for three years prior to the accident.

This case is essentially a parallel to the classic textbook example of the plaintiff with an eggshell skull, where the tortfeasor must take the injured party as it finds him, and is liable for the full extent of the harm caused by its negligence, even if a more "normal" plaintiff would not have suffered nearly as much. *See* W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 43 at 291-92 (5th ed. 1984). In this instance, Meyers's preexisting arthritic condition caused an inflammation of his joints due to the stress necessarily placed on them during the rehabilitative process following his hip-replacement surgery. The inflammation exponentially increased Meyers's pain and suffering during the process, but this is a consequence for which Wal-Mart is liable under Michigan law. *See Wilkinson v. Lee,* 617 N.W.2d 305, 308-10 (Mich. 2000) (holding that the evidence supported a jury's finding that an automobile accident was the cause in fact of symptoms such as nausea, severe headaches, dizziness, double vision, and accelerating memory loss from a preexisting brain tumor, where there was medical testimony that the trauma caused by the accident triggered the symptoms).

Finally, both Meyers and his wife testified that the hip replacement surgery permanently affected his gait and his everyday living activities. He cannot stand for more than 10 to 15 minutes or walk more than a mile-and-a-half without feeling pain in his hip, nor can he ride his bicycle as far as he was once able to do. These problems did not exist prior to the accident.

All of this evidence, when considered together, provides more than sufficient support for the jury's verdict. Because we are not "left with the definite and firm conviction that a mistake resulting in plain injustice has been committed, or [that] the verdict is contrary to all reason, we must affirm the jury's verdict." *Schoonover v. Consol. Freightways Corp. of Delaware Local 24*, 147 F.3d 492, 494 (6th Cir. 1998) (internal quotation marks omitted).

## C.   Constitutionality of the four-person jury

Wal-Mart next argues that the use of a four-person jury violated its Seventh Amendment right to a jury trial. The Supreme Court has left open this issue, stating that "while we express no view as to whether any number less than six would suffice, we conclude that a jury of six satisfies the Seventh Amendment's guarantee of trial by jury in civil cases." *Colgrove v. Battin*, 413 U.S. 149, 159-60 (1973) (upholding a district court's local rule that authorized the use of a six-member jury in civil cases).

Rule 48 of the Federal Rules of Civil Procedure, however, explicitly addresses the size of juries in civil cases:

> The court shall seat a jury of not fewer than six and not more than twelve members and all jurors shall participate in the verdict unless excused from service by the court pursuant to Rule 47(c). *Unless the parties otherwise stipulate*, (1) the verdict shall be unanimous and (2) no verdict shall be taken from a jury reduced in size to fewer than six members.

Fed. R. Civ. P. 48 (emphasis added). This language clearly indicates that parties can stipulate to a jury of fewer than six members, as Wal-Mart and Meyers have done in this case. Wal-Mart, in turn, has failed to cite any case in which a court has overturned a civil-jury verdict on the basis of jury size where the parties have stipulated to the reduced size. The absence of any such authority is not surprising, considering that the parties are always free to stipulate to a jury size of