**Isaiah TAYLOR, Jr., Plaintiff–Appellee/Cross–Appellant,**

**v.**

**INVACARE CORPORATION, Defendant–Appellant/Cross–Appellee.**

**Nos. 01–3824, 01–3827.**

United States Court of Appeals, Sixth Circuit.

May 21, 2003.

BEFORE: NORRIS and BATCHELDER, Circuit Judges; and BARZILAY, Judge.*

**OPINION**

ALAN E. NORRIS, Circuit Judge.

Invacare Corporation appeals a jury verdict in favor of Isaiah Taylor for violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. Taylor, an employee of Invacare, was dismissed after a number of absences from work. He alleged that some of the absences for which he was dismissed were protected leave under the FMLA. The jury found for Taylor and awarded back pay. The district court remitted a portion of the award based on Taylor's inability to work due to illness.

**I**

Taylor, who had worked in Invacare's shipping department since the early 1980s, was fired for cause in February 1998. Taylor testified that he had a "stress attack" on March 24, 1997, and spent the night in the emergency room. When he returned to work, Taylor said that he gave a doctor's excuse to his supervisor and was advised to take a week's vacation, which he did. He then received an "occurrence" for March 24, and it was counted against Taylor as an absence under Invacare's "no fault" attendance policy.

Taylor testified that in May 1997 he requested time off to care for his wife, who

* The Honorable Judith M. Barzilay, United States Court of International Trade, sitting by designation.

was having back surgery. Taylor took paid vacation time (the FMLA only grants unpaid leave), for which he was not penalized. He testified that in June he orally requested two days off (June 13th and 14th) from a supervisor so he could take his wife to the doctor. Taylor said that he was denied the time off, but took it anyway. He then received another "occurrence."

Taylor had compiled six and one-half unexcused absences in a twelve-month period under Invacare's attendance policy when he was warned about his attendance problems in July 1997. At the time he was terminated in February 1998, it appears that Taylor had been absent, using Invacare's attendance policy, roughly ten days in that twelve-month period. The only other performance issue Invacare pointed to was an incident on July 15, 1997, in which Taylor took an extended break.

Taylor testified that he had never seen a poster explaining his rights under the FMLA on poster boards in the company's cafeteria or work area, and another witness also testified that no such poster was in place. An Invacare human resources employee testified that, as required by 29 C.F.R. § 825.300, a poster explaining the FMLA had been in place in the cafeteria.

The jury found for Taylor and awarded $92,056.86 in back pay. The district court also found that liquidated damages were appropriate. The court next held a hearing to determine whether Taylor was entitled to front pay or reinstatement. Taylor testified at this hearing that because he had cancer he had been unable to work for a portion of the time for which he was awarded back pay. Based in part upon Taylor's current inability to work, the district court decided that reinstatement and front pay were both inappropriate. The district court also ordered a new trial on damages if Taylor did not move for remittitur in the amount of $16,727 to account for the portion of time that he would not have been able to work due to illness. Taylor moved for this remittitur. After the back pay was partially remitted, total back pay and pre-judgment interest awarded was $85,732.28. Because liquidated damages are limited to back pay and pre-judgment interest, the total award was $171,464.56.

The district court denied Invacare's request for judgment as a matter of law, a new trial, and remittitur. Invacare appeals these decisions. Taylor cross-appeals the district court's denial of front pay.[1] We affirm the judgment of the district court in all respects.

## II

The FMLA grants employees of covered firms up to twelve weeks of unpaid medical leave in a number of circumstances that includes the care for the "serious health condition" of one's self or a spouse. 29 U.S.C. § 2612(a)(1). For an employee to be protected by the FMLA when leave is foreseeable, he must provide notice to his employer within thirty days of the leave or as soon as practicable. 29 U.S.C. § 2612(e). When leave is not foreseeable, as in the case of an emergency room visit, applicable regulations provide that the employee need not invoke the FMLA explicitly, but must notify his employer that leave is required. It is then up to the employer to investigate the matter further.[2] 29 C.F.R. § 825.303.

---

1. Taylor also appeals the partial remittitur. However, because the remittitur was made at his own motion, he cannot appeal it. *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 650,

97 S.Ct. 835, 51 L.Ed.2d 112 (1977). We therefore do not address this issue further.

2. 29 C.F.R. § 825.303(a) states:

## A. Judgment as a Matter of Law

We review the denial of a motion for judgment as a matter of law *de novo*. *McCurdy v. Montgomery County*, 240 F.3d 512, 517 (6th Cir.2001). However, this court "must view the evidence in the light most favorable to the opposing party, drawing all reasonable inferences in his favor." *Meyers v. Wal–Mart Stores, East, Inc.*, 257 F.3d 625, 629 (6th Cir.2001). We do not weigh the evidence or discuss the credibility of witnesses. *Id.*

■ Invacare argues that Taylor, by his own admission, never informed Invacare of his need for leave under the FMLA. However, Taylor testified that he notified his supervisors after he sought emergency room treatment for his stress attack and that he notified his employer that he need-ed to take his wife to the doctor following her back surgery. Taylor did not have to provide advance notice or invoke the FMLA in any formal way following his stress attack because the leave required was unforeseeable.[3] Defendant does not dispute that the emergency room visit was for a "serious health condition." [4]

■ However, if the leave is reasonably foreseeable, as it may have been in the case of Taylor's wife's June visit to the doctor, then written advance notice must be given. Viewing the evidence most favorably to Taylor, it appears that he did not provide written advance notice. However, under 29 C.F.R. § 825.300(b), an employer who does not post the required notice concerning an employee's rights under the FMLA "cannot take any adverse

3. Of course, the employee must at least provide his employer with enough information for the employer to be put on notice that the FMLA is a consideration. Invacare cites to a fifth circuit case in support of its position that such notice was inadequate. In *Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973 (5th Cir. 1998), the fifth circuit held, in a case in which prior notice was not possible, that a note delivered to Wal–Mart was insufficient to inform it that the day missed was taken under the FMLA:

> "While an employer's duty to inquire may be predicated on statements made by the

When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.

employee, the employer is not required to be clairvoyant." Although Satterfield was able to telephone her doctor's office on the afternoon of 16 June and schedule an appointment, she made no attempt to then contact Wal–Mart to advise of both the status of her condition and that appointment for the following Tuesday, 20 June. *Indeed, she did not contact Wal–Mart until 28 June. Id.* at 980 (citation omitted). Here, however, we are faced with a situation in which Taylor returned to work after a brief hospital stay with a doctor's note and then took paid vacation time to aid his recuperation. In addition, he testified that he told his supervisors that he needed time off in June due to his wife's health condition, for which he had previously taken time off. Therefore, *Satterfield* is not applicable to the case at hand; Invacare was sufficiently informed of the situation to put it on notice that the leave may have been FMLA protected.

4. As the district court held, "While his stress attack turned out not to be a heart attack, an inpatient admission for purposes of examination to determine whether a serious health condition exists is itself a serious health condition. 29 C.F.R. § 825.114(b)." Memorandum and Order Jan. 31, 2001 at 3 (Ruling on Motion for Judgment as a Matter of Law).

action against an employee, including denying FMLA leave, for failing to furnish the employer with advance notice of a need to take FMLA leave." As the district court noted, there was testimony from Taylor and another employee that the required FMLA notice was not posted.[5] Although witnesses from Invacare's human resources department disputed this, we must resolve the factual dispute in favor of Taylor. Therefore, Taylor was not required to provide notice.

■ Invacare also argues that in light of Taylor's other absences and performance issues, the jury could not conclude that his dismissal was caused by his protected absences. In support, it cites *Bailey v. Amsted Industries* 172 F.3d 1041 (8th Cir. 1999). There, the eighth circuit held that, in view of seventy-two absences in a four-year period for which only three were arguably protected by the FMLA, the plaintiff could not show that he was dismissed because of his FMLA-protected leave. *Id.* at 1044–45. In addition, the plaintiff there had not satisfied the notice requirements of the FMLA. *Id.* at 1046. Here, using Invacare's counting system, Taylor had roughly ten absences in a year, and evidence existed that two of these were protected by the FMLA. Taylor had also either satisfied or was not required to satisfy the notice requirements, and Tay-

lor's emergency medical treatment for his stress attack was undoubtedly covered by the FMLA. Finally, we note that 29 C.F.R. § 825.220, relied upon by the district court, prohibits FMLA absences from counting under "no fault" attendance policies, similar to the one in place here.[6]

The jury was instructed by the district court that in order to hold Invacare liable it must find that Invacare fired Taylor as a result of an FMLA-protected absence. Construing the facts most favorably to Taylor, we believe that a reasonable jury could have so concluded.[7]

Invacare also argues that Taylor presented no medical evidence of an entitlement to FMLA leave, no medical documentation, and no testimony from experts. However, Taylor testified as to the dates and times of his and his wife's medical treatment and the name of his physician. Had Invacare wished to challenge this testimony, it could have done so, and it has cited no relevant law on this subject.

In sum, given the evidence available that leave normally protected under the FMLA counted against Taylor when he was fired as well as the evidence that the Invacare did not post the requisite notice of rights under the FMLA, the district court did not err in denying judgment as a matter of law.

---

5. The jury was instructed that it had to answer this question of fact in favor of Taylor before it could find Invacare liable for counting the June absence against him.

6. The regulation states in part:
 An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.
 29 C.F.R. § 825.220(c).

7. Defendants have not provided us with greater detail as to Taylor's attendance history and point to no other serious performance problems apart from his absenteeism. Chronic absenteeism over several years as in *Bailey* or other performance issues may well have prevented a reasonable jury from concluding that Taylor was fired due to his FMLA-protected absences.

## B. *Liquidated Damages*

We review a district court's award of liquidated damages under the FMLA for abuse of discretion. *Chandler v. Specialty Tires of America (Tennessee), Inc.*, 283 F.3d 818, 827 (6th Cir.2002). The FMLA provides for liquidated damages equal to back pay and interest. 29 U.S.C. § 2617(a)(1)(A)(iii). The employer can avoid liquidated damages if it "proves to the satisfaction of the court" that the violation of the statute was in "good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation." *Id.* Upon such a showing, the court may, at its discretion, reduce the liquidated damages.

 The district court held that Invacare did not act in bad faith. "Rather, it appears to the Court that Invacare believed it was firing Mr. Taylor because of attendance and performance problems unrelated to his FMLA-protected absences." Memorandum and Order, Jan. 31, 2001 at 2 (Ruling on Damages). However, the district court held that Invacare did not act reasonably:

> Despite Invacare's innocent motives, however, the company committed just the kind of violation of the FMLA that 29 C.F.R. § 825.220(c) was meant to proscribe. That regulation, promulgated by the Department of Labor, provides that FMLA leave cannot be counted under a "no fault" attendance policy such as the policy used by Invacare. The purpose of this regulation is to prevent an employer from considering a FMLA-protected absence in any way as a factor in a firing decision. That is, the regulation forbids employers to first count an absence as an occurrence under their policies and then to say that it was not that absence, but the "totality of the circumstances" that led to the firing .... [t]he Court believes that the evidence adduced at trial clearly supports the view that Invacare *did* impermissibly count a protected absence as an occurrence. The Court also finds that the evidence from two witnesses that Invacare had not posted notice to employees of their rights under the Act was credible. Such a failure is a clear violation of 29 C.F.R. § 825.300(a).

*Id.* at 2–3.

Defendant argues that, because the court specifically held that it acted in good faith, the court essentially applied a strict liability standard when it awarded liquidated damages. To reduce liquidated damages, however, the district court must not only find that Invacare acted in good faith, but also that its actions were reasonable. *Chandler* at 827 ("The employer must ... show *both* good faith *and* reasonable grounds for the act or omission.").

The statute clearly puts the burden of proof on Invacare to show that its behavior was reasonable. The district court found that at least one protected absence was impermissibly counted against Taylor even though Invacare knew that Taylor had missed the day due to an emergency room visit. This finding has clear support in the record. Therefore, the district court did not abuse its discretion in holding that Invacare had acted unreasonably and in awarding liquidated damages.

## C. *Expert Testimony Regarding Back Wages*

Michael Stoller, an economist, testified at trial as an expert regarding the back pay owed to Taylor. On cross-examination, Stoller admitted that he did not receive any information directly from Taylor. Apparently he relied upon a pay stub given to him by Taylor's wife as well as a discussion with her concerning her husband's benefits and latest salary increases.

Invacare raised timely objections on hearsay grounds each time Stoller testified that he was relying on what Mrs. Taylor had told him and generally objected to the whole line of testimony. We review a decision under Fed.R.Evid. 703 for an abuse of discretion.[8] *Trepel v. Roadway Exp., Inc.,* 194 F.3d 708, 716–17 (6th Cir. 1999).

At the close of Stoller's direct examination, the court instructed the jury as follows:

> As you're beginning to understand, hearsay evidence is generally not allowed. In other words, you can't take as a fact in this case something testified to by this witness where he's telling you that Mrs. Taylor told him something or Mr. Taylor told him something. That's hearsay evidence, and you can't take it as fact. But, under Rule 703, it is allowed for an expert witness to base his calculations on.... Should you decide that Mr. Taylor prevails and gets any damages, you can use it for that, but you can't use hearsay statements for other pieces of this jigsaw you're putting together. Okay?

Joint App. at 133–34.

In reviewing the testimony on Invacare's motion for a new trial, the district court held as follows:

> In this Court's view, it is reasonable for an economist calculating damages to rely upon a plaintiff's statement of his earnings; if the plaintiff misstates his own earnings, the defendant can easily call the error to the jury's attention on cross-examination. Moreover, in this particular case, the court heard testimony from both Mr. Taylor and Mrs. Taylor. It is evident to the Court, based on its observation of the Taylors' respective demeanors, that Mrs. Taylor has a much better grasp of details and is much more articulate than her husband. Therefore, it would not be unreasonable for an economist in this case to rely on Mrs. Taylor's statements concerning her husband's salary and benefits.

Memorandum and Order, Jan. 31, 2001 at 5 (Ruling on Motion for Judgment as a Matter of Law).

Invacare argues that the expert did not review any of Taylor's tax returns for 1999, any financial information for the year 2000, or take any information regarding plaintiff's mitigation of damages through his own auto repair shop business or the monies that plaintiff received from unemployment. On cross-examination, Stoller stated that Taylor's 1998 tax return did not show any income, so he did not have to take account of this. In addition, he argued that he completed his report in 1999 and therefore could not consider income tax returns for 1999 or 2000. Defendant raised these contentions during cross-examination. We note that although Stoller testified that Taylor was owed approximately $120,000 in back pay, the jury awarded roughly $92,000.

■ The district court did not abuse its discretion in admitting Stoller's testimony.

---

8. Federal Rule of Evidence 703 details the sources upon which experts may rely:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

F.R.E. 703.

He relied on pay stubs (which were attached to his report) and statements of Mrs. Taylor, who the district court believed to be reliable regarding her husband's salary and benefits. In addition, as the district court noted, Invacare could have easily countered any inaccurate testimony concerning pay and benefits.

D. *Denial of Remittitur for Failure to Mitigate*

We review a district court's denial of a motion for remittitur for abuse of discretion. *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).

Invacare argues that Taylor failed to look for work after August 1998 and that all back pay after that month should be remitted. Taylor, however, testified that he looked for work until his unemployment compensation ran out, after which he was self-employed as a mechanic and tower. He testified that he was trying to build it up to a full-time job.

The burden of showing lack of mitigation is on the defendant. *See Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 623 (6th Cir.1983) ("Once a claimant establishes a prima facie case and presents evidence on the issue of damages, the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant.") The defendant must show that substantially equivalent positions were available and the plaintiff failed to use reasonable diligence in seeking them out. *Id.* at 624. The district court correctly instructed the jury that the burden of proof on mitigation lay with Invacare.

■ Invacare does not cite to any evidence it presented regarding mitigation of damages, but only to Stoller's answer on cross-examination that unemployment was low and jobs were plentiful. Invacare cites to no evidence that jobs were plentiful for men of Taylor's age, skill, and experience. It also did not offer evidence that it was unreasonable for Taylor to start his own business.[9] Because defendant did not meet its burden, the district court did not abuse its discretion when it declined to remit the award for failure to mitigate.

E. *Cross–Appeal of Denial of Front Pay*

The appropriateness of reinstatement and front pay, as equitable remedies, are within the discretion of the district court. *Schwartz v. Gregori*, 45 F.3d 1017, 1023 (6th Cir.1995). Both parties agreed at a post-trial hearing that reinstatement (the generally preferred remedy) was not appropriate.

At the front-pay hearing, Taylor testified that he had been suffering from prostate cancer. The health problems caused by the cancer were obviously severe, as Taylor testified that he was still under a doctor's care and could not lift more than five pounds. The district court was skeptical of whether front pay would be appro-

---

9. An opinion from the second circuit has collected relevant cases regarding mitigation and self-employment and reached the correct conclusion:

> Self-employment, if it is undertaken in good faith and is a reasonable alternative to seeking other comparable employment, may be considered permissible mitigation. *See, e.g., Smith v. Great American Restaurants, Inc.*, 969 F.2d 430, 438 (7th Cir.1992) (jury could conclude that plaintiff's opening of her own restaurant was a reasonable venture); *Carden v. Westinghouse Electric Corp.*, 850 F.2d 996, 1005 (3d Cir.1988) ("[A] selfemployed person is 'employed' for the purposes of mitigating damages if establishing a business of his own was a reasonable alternative to finding other comparable employment.").

*Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 696 (2d Cir.1998).

priate in such a situation and stated at the hearing:

I think you have to show us that it's likely he would be able to work at the kind of job that he had before.

And you're not-you can't do that when you come in here and the only testimony he has is he's going to see his doctor every four months for a year. It's going to be a statistical situation on how many people have this surgery and be cancer-free and go back to work in how many years and all that.

But I don't see anything to do here other than to just continue this trial until we get some evidence [on this]. . . .

Hearing Transcript, Feb. 21, 2001 at 26.

■ On April 6, 2001, the district court issued an order requiring Taylor to brief his entitlement to front pay by April 20. No brief was filed, and the district court denied front pay in part based on Taylor's ill health. It was not an abuse of discretion for the district court to require a briefing on the law and the presentation of more medical evidence from the plaintiff in order to make an accurate estimate of Taylor's working life. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 862 (7th Cir. 2001) ("A plaintiff who seeks an award of front pay must provide the district court with the essential data necessary to calculate a reasonably certain front pay award.") (internal quotation omitted). Thus, the district court, on the evidence before it and after having given plaintiff ample time to demonstrate that he deserved front pay, did not abuse its discretion in denying front pay.

### III

The judgment of the district court is affirmed.